[Crim. No. 1261.   Fourth Dist.   Nov. 5, 1959.]

THE PEOPLE, Respondent, v. ROBERT WAYNE
STEVENS, Appellant.

James R. Abernathy for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Ernest E. Sanchez for Respondent.

SHEPARD, J.—Defendant was tried and convicted of five counts of felony; one of grand theft (Pen. Code, § 487); one of attempted grand theft (also Pen. Code, § 487); and three of forgery (Pen. Code, § 470).

A fair reading of the record, consistent with the jury's verdict of guilty on all five counts, discloses the following to

be the facts: On or about the 16th of April, 1958, defendant arrived in Bakersfield where he obtained the name of Charles Adams from the local telephone directory. He will hereinafter be referred to as Adams. Defendant placed a call to Mrs. Adams and, representing himself to be a Mr. Harris of the local credit bureau, requested and obtained personal and economic history concerning the Adamses. Inasmuch as the Adamses had applied for credit in Bakersfield, Mrs. Adams thought the call legitimate and supplied the information requested.

Shortly thereafter, defendant rented a house in Bakersfield using the name and history of Adams. On the following day (April 17th) defendant went to the Valley Furniture Company (Count II) and, again using the history and name of Adams, forged the name of Adams to a conditional sales contract, thus fraudulently obtaining possession of a four-piece bedroom set priced at $255.47, on which was made a $25 down payment. Defendant's forgery of Adams' name to both the credit application form and conditional sales contract was witnessed by a Valley Furniture Company bookkeeper.

Defendant then went to Booth's radio and appliance store where he ordered a stove and refrigerator, again forging the name and using the history of Adams. These articles were never delivered. It was the inquiry from this store to the real Adams that ultimately revealed defendant's deceptions. This forgery was never charged. From Booth's, defendant went to the McMahan Furniture Store (Count I) where he selected a freezer, cooler, and dinette set of a total value of $720.42 minus a down payment of $20. Again, defendant forged the name of Adams to a credit application and conditional sales contract and obtained delivery of the goods above described, also forging Adams' name to the delivery receipt.

Upon leaving McMahan's, defendant then went to the Weatherby Store (Count III) where he attempted to obtain a couch, coffee table, step table, portable cooler, and washer-dryer combination for a total of $873.64. In the presence of a Weatherby employee defendant gave the history of Adams and thereupon forged the name of Adams to a conditional sales contract. The fraud was discovered before these goods could be delivered.

On the following day (April 18th), shortly after noon, defendant went to the Montgomery Ward Store (Count V) where he negotiated a purchase of a sofa and chair for a total of $325.70 minus a $10 down payment. Here again he used

the history and forged the name of Adams. The record is not clear as to whether the goods were actually delivered. Immediately thereafter, defendant negotiated the purchase of electric appliances from the Davis Furniture Company (Count IV), again using the history and forging the name of Adams for a total of $368 less a $32 down payment. These articles were to be delivered on April 19th but apparently were not actually delivered. As hereinbefore noted, during the course of defendant's negotiations with Booth's on the 17th, that store found it necessary to contact Adams at his place of business with respect to the goods purchased. Of course, when this occurred, defendant's deception was discovered. When defendant was apprehended by the police, he identified himself as Charles D. Adams and this fiction was unwittingly maintained by employees of some of the furniture companies where he had made purchases because they knew him only through his fraudulent purchases. It was not until defendant had been taken to the Bakersfield Police Station, where he failed to either identify or recognize the true Adams, that he gave his real name. At this time defendant admitted to the police officers that he had neither permission nor authority from Adams to sign his name to any credit application or sales ticket or contract.

Appellant's first contention is that the evidence is insufficient to support the verdicts. ▆ With regard to this, "The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact. It is not whether guilt is established beyond a reasonable doubt." (*People* v. *Daugherty* (1953), 40 Cal.2d 876, 885 [4] [256 P.2d 911].) Defendant's testimony claiming authority from Adams merely presented a conflict of evidence with the jury as the arbiter thereof.

▆ ▪ Specifically, appellant contends that the prosecution failed to prove beyond the reasonable doubt required that there was a specific intent to defraud. With respect to the grand theft count, the evidence shows that appellant signed a false purchaser's statement applying for credit as well as a conditional sales contract for $562.90 worth of property belonging to the McMahan Furniture Company, and that appellant accepted delivery of these goods in fact as evidenced by a signed delivery slip. ▆ With respect to the attempted grand theft count, appellant did the same as the foregoing, except this time to Weatherby's Department Store, and except that he did not receive delivery of the goods by the

time of his arrest. Considering that appellant both signed a false credit application and sales slip but also ordered the merchandise to be delivered on a given day (April 18th); the fact that the merchandise was not actually delivered is immaterial since no further positive act remained for appellant to complete for his fraudulent scheme to be consummated. Thus, all the elements of attempt were present, as the crime of theft would have been consummated unless interrupted by circumstances outside of the control of appellant. (*People* v. *Buffum* (1953), 40 Cal.2d 709, 718 [9] [256 P.2d 317]; and see generally 14 California Jurisprudence 2d, Criminal Law, section 27, page 211.)

As far as the three counts of forgery are concerned, in all three instances the evidence shows that appellant signed a credit application and sales slip or conditional sales contract using a name he knew neither to be his own nor authorized by the person with that name. In this regard, the jury was entitled to believe the evidence that appellant was unable to either identify or recognize the true Adams, and thus falsified when he said that Adams had authorized him to use Adams' name. In addition, the record discloses that defendant used several aliases and the jury was entitled to weigh this fact along with all the other circumstances of the case as shown by the evidence. Specific intent may be proved by circumstantial evidence. ██ "The intent with which the act is done is manifested by the circumstances under which it was committed. (Pen. Code, § 21.) " (*People* v. *Hobbs,* 109 Cal.App.2d 189, 192 [3] [240 P.2d 411]; *People* v. *Jones,* 42 Cal.2d 219, 223 [4] [266 P.2d 38].)

Appellant next contends that the trial court committed reversible error by allowing the prosecution to cross-examine appellant's handwriting expert witness as to his qualifications after his testimony had already been admitted on direct examination. In effect, appellant argues that the qualifications of an expert can only be questioned on *voir dire* and that once the expert testified on direct examination his qualifications can no longer be placed under attack. Appellant himself used this very technique in an attempt to discredit the prosecution's expert witnesses. Thus his position is weakened at the start. However, appellant's position has no merit in any event. An adverse party *may* cross-examine an expert as to his qualifications before his testimony; and also after the expert has given his opinion. Thus cross-examination on matters directly bearing on the soundness of the

witness' judgment is proper. This, of course, includes the soundness of the witness' qualification. *In re Mullin* (1895), 110 Cal. 252, 255-256 [2] [42 P. 645]; and see Witkin, California Evidence (1958), 684, and cases and materials cited therein.

From an examination of the witness' testimony it appears that the witness himself attempted, particularly on cross-examination to bolster up his ability as a handwriting expert by references to his ability as a psychoanalyst and graphologist. Such effort immediately made cogent the cross-examination in the latter field. The extent of such cross-examination is subject to the discretionary control of the trial court. We find no abuse of discretion in the trial court's ruling. (*People* v. *Tallman* (1945), 27 Cal.2d 209, 214 [7] [163 P.2d 857]; *People* v. *Ryan* (1956), 140 Cal.App.2d 412, 421 [3] [295 P.2d 496].)

█ Appellant's third contention is that the trial court erred in refusing to give defendant's requested instructions on specific intent. In addition to instructing the jury that an essential element of each crime of which the defendant was accused is intent and that there must exist a union of criminal conduct and criminal intent, the trial court also instructed that an attempt consists of both an ineffectual act as well as specific intent; that larceny consists of both a carrying away of personalty as well as an intent to permanently deprive the owner thereof; that larceny by trick requires a felonious intent to convert the property of another; that theft by false pretenses requires the defendant to have intended to defraud; and finally, that the existence of an intent to defraud is an essential element of forgery. These instructions, taken together, make it quite clear that appellant's third contention is without merit. █ The trial court is not required to give instructions in any special language nor to repeat material already adequately covered. (*People* v. *Geibel,* 93 Cal.App.2d 147, 176 [21] [208 P.2d 743]; *People* v. *Steccone,* 36 Cal.2d 234, 240 [7] [223 P.2d 17].)

█ Appellant's final contention is that the trial court's sentence is not clear. The judgment states that "It is ordered that sentences shall be served in respect to one another as follows: Count Two to run consecutively to Count One; and Counts Three, Four and Five to run concurrently with Count Two." This clearly means, without equivocation, that defendant is to serve his term on Count One first; thereafter, the terms on Counts Two, Three, Four and Five are to commence

and are to run concurrently with each other. With respect to appellant's argument that this sentence is excessive and violative of fundamental principles of law, we see no merit. (*People* v. *White,* 100 Cal.App.2d 836, 839 [3] [224 P.2d 868]; *People* v. *DiMichele,* 149 Cal.App.2d 277, 280 [1b] [308 P.2d 365].)

The judgment is affirmed.

Griffin, P. J., and Coughlin, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.