[Crim. No. 32588. Second Dist., Div. Four. July 16, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
ERNESTO PATINO et al., Defendants and Appellants.

**COUNSEL**

Michael W. McIsaac, Thomas Kallay and Patrick M. Thompson, under appointments by the Court of Appeal, for Defendants and Appellants.

George Deukmejian, Attorney General, Jack R. Winkler and Robert H. Philibosian, Chief Assistant Attorneys General, Daniel J. Kremer, Assistant Attorney General, Harley D. Mayfield and Beatrice W. Kemp, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**JEFFERSON (Bernard), J.**—In count I of an information, defendants Patino, Walton and De La Torre were charged with the commission of the crime of lynching, a felony, in violation of section 405a of the Penal Code.[1] It was alleged that the lynching offense was committed on May 27, 1977, by the defendants, through use of force and violence, in taking from the lawful custody of two peace officers of the City of Los Angeles an unidentified human being who was in the lawful custody of the officers.

In count II, the same defendants were charged with having committed the felony of obstructing executive officers in the performance of their duties in violation of Penal Code section 69.[2] It was alleged in count II that defendants committed such offense on May 27, 1977, by attempting,

---

[1]Penal Code section 405a provides: "The taking by means of a riot of any person from the lawful custody of any peace officer is a lynching."

Penal Code section 404, subdivision (a), defines a "riot" in the following language: "Any use of force or violence, disturbing the public peace, or any threat to use such force or violence, if accompanied by immediate power of execution, by two or more persons acting together, and without authority of law, is a riot."

[2]Penal Code section 69 defines the offense of obstructing or resisting executive officers in performance of their duties by providing, in pertinent part for our purposes, that such offense is committed by "[e]very person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law, or who knowingly resists, by the use of force or violence, such officer, in the performance of his duty."

by means of threats and violence, to deter and prevent A. W. Calliham and J. M. Montes, who were executive officers, from performing duties imposed upon such officers by law.

Defendants entered pleas of not guilty. A motion to dismiss the information, made pursuant to Penal Code section 995, was denied. Trial was by jury.[3] At the conclusion of the People's case in chief, each defendant's motion for a judgment of acquittal, made pursuant to Penal Code section 1118.1, was denied. The jury found the defendant Patino guilty as charged in both counts. Defendant Walton was found guilty of the misdemeanor offense of breach of the peace in violation of Penal Code section 415, a lesser but necessarily included offense within that charged in count I. Defendant Walton was also found guilty as charged in count II. Defendant De La Torre was found guilty as charged in both counts. Sentence was suspended as to each of the defendants and each was granted probation on certain enumerated conditions.

Defendants Patino, Walton and De La Torre have appealed from the judgments of conviction.

I

*The Factual Background*

In the early morning hours of May 27, 1977, Los Angeles Police Officers Juan Montes and Allen Calliham responded to a silent burglary alarm triggered at a bar in the City of Wilmington. When the officers arrived at the location, they observed a suspect backing through the front door carrying a box. The officers ordered this man to halt. The suspect responded by dropping the box and fleeing. An initial pursuit of the suspect was not successful and the officers returned to the bar and then began patrolling the area. After about an hour, the two officers spotted the suspect again and gave chase. The suspect ran to an apartment complex and was seen by the officers to enter into an apartment on Avalon Street. The door to the apartment was open with the exception of a screen door. The 2 officers entered into the apartment where 10 or 12 other persons were gathered and the suspect had taken a seat on a chair. Officer Montes asked the suspect to step outside. The suspect then stood up and Officer Montes escorted him outside of the apartment and

---

[3]Laura Cruz, Juan Fabella, and Carol Ann Martinez were also tried as codefendants with defendants Patino, Walton and De La Torre. The cases of the first three codefendants mentioned are not before us.

turned him over to Officer Calliham. Officer Calliham placed the suspect under arrest and began to place handcuffs on him. The suspect began to yell and struggle with the officer and refused to permit himself to be handcuffed.

Occupants of the apartment began to come out of the apartment and started screaming and yelling at the officers. Officer Montes ordered them to stop interfering. However, several additional persons joined the group, including defendants De La Torre and Patino. The crowd continued to yell at the officers and advance toward them. The crowd was then joined by defendant Walton. As the crowd continued yelling for the officers to release the suspect, a beer bottle was thrown which struck Officer Montes on the forehead. The officers retreated with the suspect as the crowd advanced toward the officers. At some point while Officer Calliham was struggling with the suspect on the ground, still trying to place handcuffs on him, someone pulled the officer off of the suspect and the suspect was able to break free and escape. The evidence also established that, as Officer Calliham was still trying to subdue the suspect, the officer was kicked twice. The officers never found or apprehended the suspect.

## II

### *Contentions of the Defendants*

Defendant De La Torre makes the following contentions: (1) that it was error for the trial court to deny his motion to set aside the information made pursuant to Penal Code section 995; (2) that the trial court erred in denying his motion for acquittal made at the close of the People's case in chief pursuant to Penal Code section 1118.1; and (3) that the trial judge should have, *sua sponte,* ordered separate trials for each of the defendants.

Defendant Walton advances the following contentions: (1) that the evidence was insufficient to sustain his conviction for the misdemeanor offense of breach of the peace; (2) that the jury was not properly instructed on the lesser included offense of breach of the peace; and (3) that the prosecutor committed prejudicial misconduct.

Defendant Patino urges three points for the reversal of his conviction: (1) the burglary suspect was never in legal custody of the police officers by reason of his seizure in violation of Penal Code section 844; (2) that the prosecutor committed prejudicial misconduct in his closing argument

to the jury; and (3') the instructions were inadequate with respect to lesser included offenses.

## III

### The Arrest of the Suspect Was Not Accomplished in Violation of Penal Code Section 844

█ Penal Code section 844 provides that a police officer may not break into a home to effect an arrest without first demanding admittance and explaining the purpose for which admittance is sought. It is the contention of Patino that the burglary suspect in the case before us was seized by the police officers by entering the apartment without any announcement that they were police officers or that their purpose of seeking entry was to arrest the burglary suspect. It is clear that the officers did *not* comply with the requirements of Penal Code section 844 by identifying themselves as police officers or announcing their purpose of entry to arrest the burglary suspect.

The decisional law, however, has set forth exceptions under which noncompliance with Penal Code section 844 is permissible. █ Thus, it has been held that a failure to comply with section 844 does not make an arrest illegal " 'if the specific facts known to the officer before his entry are sufficient to support his good faith belief that compliance will increase his peril, frustrate the arrest, or permit the destruction of evidence.' " (*Parsley* v. *Superior Court* (1973) 9 Cal.3d 934, 938 [109 Cal.Rptr. 563, 513 P.2d 611]; see also *People* v. *Dumas* (1973) 9 Cal.3d 871 [109 Cal.Rptr. 304, 512 P.2d 1208]; *People* v. *Tribble* (1971) 4 Cal.3d 826 [94 Cal.Rptr. 613, 484 P.2d 589].)

█ In the instant case the facts do not establish a situation in which the officers could have believed that compliance with section 844 would have either (1) permitted the possible destruction of evidence, or (2) frustrated the arrest of the suspect. If the noncompliance with section 844 is to be justified in the instant case, it must be on the basis that the officers believed that compliance with section 844 would have increased their peril.

The facts demonstrate that the officers were in hot pursuit of the burglary suspect even though an hour had elapsed after they were first chasing the suspect and the time in question when the suspect was followed into the apartment. Most of the "hot pursuit" cases in which noncompliance with Penal Code section 844 has been excused have been

cases in which the factor of peril to the officer was involved because of the dangerous character of the suspect. Examples of these cases are found in *People* v. *Gilbert* (1965) 63 Cal.2d 690, 707 [47 Cal.Rptr. 909, 408 P.2d 365], vacated on other grounds by *Gilbert* v. *California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951]; and in *People* v. *Smith* (1966) 63 Cal.2d 779, 797 [48 Cal.Rptr. 382, 409 P.2d 222]. As pointed out by the court in *People* v. *Escudero* (1979) 23 Cal.3d 800, 811 [153 Cal.Rptr. 825, 592 P.2d 312], "[t]he need to prevent the imminent escape" of a suspect precludes a defendant from reliance upon the failure of the arresting officers to comply with Penal Code section 844 before entry into the home to which the suspect has escaped.

The *Escudero, Gilbert* and *Smith* cases involved the hot pursuit of suspects under circumstances which presented a situation of danger or peril to the pursuing officers because of the serious nature of the crime involved and the possibility of peril to the officers because of the potential for violent confrontation.

The factual situation presented in the case before us comes within the principles set forth in *Escudero, Gilbert* and *Smith* that justify an exception to Penal Code section 844 of a "hot pursuit" to prevent the escape of a suspect in an instance in which a violent confrontation between the suspect and officer is probable or possible. Having caught the suspect in the act of completing a burglary of a bar in the early morning hours, the officers could reasonably believe that the suspect was armed as he fled and entered the apartment. Under these circumstances, the officers could have honestly believed that a violent confrontation was in the making.

We conclude, therefore, that the doctrine of "hot-pursuit" justification for noncompliance with Penal Code section 844 was applicable to prevent the escape of the suspect in question. Hence, the suspect was legally arrested and in the custody of the two police officers by reason of an exception to the notice and knock requirements of Penal Code section 844.

## IV

### *The Jury Was Properly Instructed on Lesser Included Offenses*

Defendant Walton asserts that the trial court did not give complete instructions on the lesser included offense of breach of the

peace—one offense of which he was convicted. Defendant Walton's contention in this regard is that the trial court did not give CALJIC instruction No. 16.260, which defines the elements of the offense constituting a breach of the peace. The instructions to the jury were not transcribed and the clerk's transcript initially filed with us does not indicate that this instruction was given. The People requested augmentation of the record on appeal to establish that CALJIC instruction No. 16.260 should have been included in the clerk's transcript on appeal as it was actually given to the jury by the trial judge. Permission to augment the record on appeal was granted. The augmented record establishes that the trial court, at the request of the People, gave the following CALJIC instruction No. 16.260 (1977 revision): "Every person who maliciously and wilfully disturbs another person by loud and unreasonable noise or who uses offensive words in a public place which are inherently likely to provoke an immediate violent reaction, is guilty of a misdemeanor." In view of the augmented record, defendant Walton's contention with respect to the failure of the court to properly instruct on the lesser included offense of breach of the peace must be rejected.

█ Defendant Patino contends that the trial court should have instructed, *sua sponte,* on other lesser but necessarily included offenses. Patino contends that the trial court had a duty, *sua sponte,* to instruct on the misdemeanor offense of "rout," set forth in Penal Code section 406, and the misdemeanor offense of "unlawful assembly," set forth in Penal Code section 407, and the misdemeanor offense of "[r]emaining present at place of any riot, etc., after warning to disperse," set forth in Penal Code section 409. Section 406 provides that the misdemeanor offense of "rout" occurs "[w]henever two or more persons, assembled and acting together, make any attempt or advance toward the commission of an act which would be a riot if actually committed." Section 407 provides that the misdemeanor offense of "an unlawful assembly" is committed "[w]henever two or more persons assemble together to do an unlawful act, or do a lawful act in a violent, boisterous, or tumultuous manner." Penal Code section 409 provides that "[e]very person remaining present at the place of any riot, rout, or unlawful assembly, after the same has been lawfully warned to disperse, except public officers and persons assisting them in attempting to disperse the same, is guilty of a misdemeanor."

█ The court's duty to instruct, *sua sponte,* on various principles of law, is set forth in *People* v. *Sedeno* (1974) 10 Cal.3d 703 [112 Cal.Rptr. 1, 518 P.2d 913]. There the court observed: " 'It is settled that in criminal

cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case.' [Citation.] That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged. [Citations.]" (*Id.,* at pp. 715-716.)

In addition, it is held that "[t]he obligation to instruct on lesser included offenses exists even when as a matter of trial tactics a defendant not only fails to request the instruction but expressly objects to its being given." (*Sedeno, supra,* 10 Cal.3d 703, 716; fn. omitted.)

██ We agree with defendants Patino and Walton that the misdemeanor offenses of "rout," "unlawful assembly" and "remaining present at a place of riot or rout or unlawful assembly," as set forth in Penal Code sections 406, 407 and 409, respectively, are lesser and necessarily included offenses within the offense of lynching proscribed by Penal Code section 405a. The issue before us, therefore, is whether the evidence in the case at bench raises a question as to whether all of the elements of the charged offense of lynching were present. But if a review of the evidence in the case at bench discloses that "there is no evidence that the offense was less than that charged" (*Sedeno, supra,* 10 Cal.3d 704, 715), the giving of instructions on these lesser included offenses would not be required or appropriate.

We conclude that the evidence adduced at the trial was not susceptible to any reasonable inference that less than all of the elements of the charged offense of lynching was present. The essence of the offense of lynching is the taking, by means of riot, of a suspect from lawful custody of a peace officer. (Pen. Code, §§ 405a, 404.) That the offense of lynching was committed by a group of persons in the instant case is scarcely open to question from the evidence presented by the prosecution. The question presented is whether defendants Patino and Walton participated in the crime which the evidence indicated was committed. If the jury had believed the evidence presented by Patino and Walton, these two defendants were not participants and had committed no crime at all. On the other hand, if the jury believed the evidence presented by the

prosecution, Patino and Walton participated in the acts constituting the crime of lynching and were guilty of that offense.

The evidence which defendants Walton and Patino introduced was to the effect that neither was present in the original group of persons who left the apartment and converged toward the officers. Each came upon the scene separately. To the extent that each joined in aiding and abetting other members of the group in committing the lynching offense charged, then each became guilty of that offense. There was evidence that Walton was in back of the main group that was converging upon the officers and he was yelling at the officers. Such individual acts could be considered as falling within the misdemeanor offense of Penal Code section 415—that of being a "person who maliciously and willfully disturbs another person by loud and unreasonable noise." But the evidence was not reasonably susceptible of an interpretation that either of these defendants acted with one or more other persons to constitute the offense of a "rout" or "unlawful assembly." To the extent that Walton or Patino acted with any other persons, they committed the full scale offense of lynching that involves a "riot" rather than any lesser offense of rout or unlawful assembly.

It is the defendant Patino who advances the contention that the trial court should have, *sua sponte,* given instructions on the lesser included offenses of rout, unlawful assembly and failure to disperse. But there is no evidence in the record that would have supported a jury determination that defendant Patino may have been guilty of any of these three lesser offenses proscribed by Penal Code sections 406, 407 and 409. Looking at the People's evidence, it is manifest that Patino was one of the individuals who exited from the apartment and was one of those in the front of the group advancing on the officer. After the officer drew his baton and ordered everyone to stay back and not become involved, they continued to advance toward Officer Montes and continued yelling and screaming, with Patino in front of the crowd raising his hands in clenched fists and stating, "[y]ou better get the hell out of here, pig, and leave him alone."

Contrary to the testimony of Officer Montes, defendant Patino testified that he had not come out of the apartment at all, but that he and defendant De La Torre had come upon the scene after seeing and hearing the commotion, and that he, Patino, sought to calm the crowd and support the officers. If Patino's testimony was to be believed, no inferences therefrom could support a finding that he had committed the misdemeanor offenses of rout, unlawful assembly or failing to disperse.

Under the People's evidence, however, Patino was guilty of the two offenses charged in the information. Under his defense testimony he was not guilty of any offense at all.

In the instant case, there was no evidence presented by the prosecution or the defendants that the officers had given any warning to disperse in order to make applicable the possibility of Penal Code section 409 becoming a viable lesser and necessarily included offense to that of "lynching"—the felony offense charged in count I of the information.

V

█ *Defendant De La Torre's Motion, Made*
*Pursuant to Penal Code section 995,*
*Was Properly Denied*

Penal Code section 995 requires that an information be set aside if a defendant has been committed without reasonable or probable cause. The law is well settled as to the quantum of evidence that must be presented at a defendant's preliminary hearing to withstand a motion to dismiss the information pursuant to Penal Code section 995. █ Evidence at a preliminary hearing to establish "reasonable or probable cause" to justify a defendant's prosecution need not be sufficient to support a conviction. " 'Probable cause is shown if a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused.' " (*People* v. *Ketchel* (1963) 59 Cal.2d 503, 532 [30 Cal.Rptr. 538, 381 P.2d 394]; *Jackson* v. *Superior Court* (1965) 62 Cal.2d 521, 525 [42 Cal.Rptr. 838, 399 P.2d 374].) Thus, "[a]n information will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it." (*Rideout* v. *Superior Court* (1967) 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197].)

█ In reviewing the sufficiency of the evidence to meet the test of "reasonable or probable cause" to justify defendant's prosecution, the reviewing court "may not substitute its judgment as to the weight of the evidence for that of the magistrate, and, if there is some evidence to support the information, the court will not inquire into its sufficiency." (*Rideout, supra,* 67 Cal.2d 471, 474; *Jackson, supra,* 62 Cal.2d 521, 525.) In reviewing the evidence at the preliminary hearing to determine its sufficiency to withstand a dismissal under Penal Code section 995, it is

also established law that "[e]very legitimate inference that may be drawn from the evidence must be drawn in favor of the information." (*Rideout, supra,* 67 Cal.2d 471, 474; *People* v. *Dickinson* (1976) 59 Cal.App.3d 314, 320-321 [130 Cal.Rptr. 561].)

■ De La Torre's argument on insufficiency of the evidence to preclude application of Penal Code section 995, is based upon the theory that the prosecution's evidence did not establish that he was residing in the apartment from which the incident developed and that there was no testimony that he touched either the suspect or the officers involved. But the evidence at the preliminary hearing clearly identified defendant De La Torre as being a part of the crowd which advanced upon the officers in menacing fashion, yelling and screaming at the officers, with bottles being thrown and the officers being struck, with the result that the officers were unable to keep the suspect in their custody. Defendant De La Torre became a principal in the "riot" because of his actions in encouraging, aiding and supporting the actions of the other members of the crowd. Accordingly, the magistrate was entitled to find from the evidence that there was reasonable or probable cause to hold that defendant De La Torre had committed the two offenses of violating Penal Code sections 405a (lynching) and 69 (obstructing an officer in the performance of his duties).

## VI

■ *Defendant De La Torre's Motion for Acquittal, Made Pursuant to Penal Code Section 1118.1, Was Properly Denied*

Defendant De La Torre claims that the trial court erred in denying his motion for acquittal, made pursuant to Penal Code section 1118.1,[4] following the prosecution's case in chief. De La Torre asserts that the prosecution's evidence failed to establish the intent element necessary for each of the offenses charged against him. It is De La Torre's position that the only evidence offered by the prosecution to establish his guilt was his mere presence at the scene of the crimes committed by others.

---

[4]Penal Code section 1118.1 provides as follows: "In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal. If such a motion for judgment of acquittal at the close of the evidence offered by the prosecution is not granted, the defendant may offer evidence without first having reserved that right."

Both defendant De La Torre and the People agree that the appropriate test for determining when a section 1118.1 acquittal shall be ordered is set forth in *People* v. *Wong* (1973) 35 Cal.App.3d 812 [111 Cal.Rptr. 314]. ■ *Wong* points out that "[u]nder this statute [Pen. Code, § 1118.1] a trial court must apply the same test utilized by an appellate court in reviewing a judgment of conviction, i.e., whether there is substantial evidence of the existence of each element of the offense charged." (*Id.,* at p. 828.) In setting forth the responsibility of the appellate court to review the trial court's denial of a Penal Code section 1118.1 motion, the *Wong* court observed that "[i]n applying the substantial evidence rule to a motion under Penal Code section 1118.1, we must, where the trial court has denied the motion, assume in favor of its order the existence of every fact from which the jury could have reasonably deduced from the evidence whether the offense charged was committed and if it was perpetrated by the person or persons accused of the offense." (*Id.,* at p. 828.)

■ It is to be noted that the substantial evidence test is to be applied to each element of the offense charged. The question to be determined is "whether from the evidence, including reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged. [Citations.]" (*People* v. *Valerio* (1970) 13 Cal.App.3d 912, 919 [92 Cal.Rptr. 82].) It is also of significance that "[t]o be considered substantial, evidence must be of the type which 'reasonably inspires confidence and is "of solid value." ' " (*People* v. *Reyes* (1974) 12 Cal.3d 486, 497 [116 Cal.Rptr. 217, 526 P.2d 225].)

As indicated, defendant De La Torre's attack upon the sufficiency of the evidence against him relates to the question of the *intent* element of the two crimes charged. ■ It is clear that the offense of lynching (Pen. Code, § 405a) is a general intent crime, rather than a specific intent crime. ■ The crime of obstructing or resisting an officer in the performance of his duties (Pen. Code, § 69) would appear to require an act done with the specific intent to interfere with the officer's performance of his duties.

■ However, it is well settled law that criminal intent, whether general or specific, may be established by circumstantial evidence. (*People* v. *Stevens* (1959) 175 Cal.App.2d 123, 127 [345 P.2d 582].) ■ The evidence which the prosecution presented against defendant De La Torre and which has been set forth previously herein, demonstrates that it was sufficient to establish that he possessed the

criminal intent necessary for each of the crimes charged. The evidence establishes that defendant De La Torre did more than just be present at the time the offenses were committed by other persons. Defendant De La Torre was identified as one of the persons in the crowd who was yelling, screaming and advancing on the officers in a threatening manner. There was testimony that defendant De La Torre personally ordered the officers to leave the scene while the officers were seeking to put handcuffs on the suspect who had been placed under arrest. From this evidence an inference could reasonably be drawn that De La Torre possessed the general intent required of the crime of "lynching" and the specific intent required of the crime of "obstructing police officers in the performance of their duties." There was no error, therefore, in the ruling of the trial court in denying defendant De La Torre's motion for a judgment of acquittal at the close of the prosecution's case in chief.

## VII

### The Evidence Was Sufficient to Support Defendant Walton's Conviction for Breach of the Peace

Defendant Walton was convicted of the misdemeanor offense of breach of the peace, in violation of section 415 of the Penal Code, a lesser but necessarily included offense than that charged in count I—the lynching offense. Penal Code section 415 provides, in subdivision (2), that a person commits the offense of breach of the peace if he "maliciously and willfully disturbs another person by loud and unreasonable noise." Penal Code section 415 also provides, in subdivision (3), that a person commits the misdemeanor offense of breach of the peace if he "uses offensive words in a public place which are inherently likely to provoke an immediate violent reaction."

It is defendant Walton's contention that the evidence is insufficient to support his conviction of a violation of either subdivision of Penal Code section 415. We find no merit in this contention. Although defendant Walton was observed to be in the back of the crowd which was advancing upon the officers and yelling and screaming, he was identified as yelling and screaming along with the others. In addition, the evidence establishes that defendant was part of a crowd that used physical violence as well as yelling and screaming for the purpose of interfering with lawful police activity.

We are not presented here with a case in which crowd noise alone is involved. In *In re Brown* (1973) 9 Cal.3d 612, 621 [108 Cal.Rptr. 465, 510 P.2d 1017], the court commented that it was satisfied that loud noise which is proscribed by Penal Code section 415 constitutes an offense in two situations only: "1) where there is a clear and present danger of imminent violence and 2) where the purported communication is used as a guise to disrupt lawful endeavors." Since the yelling by the crowd was intended to disrupt the lawful endeavor of the police officers to arrest and retain custody of a suspect, and since some of the language used by the crowd constituted offensive words inherently likely to provoke an immediate violent reaction, the jury could properly find that defendant Walton had committed a violation of both subdivisions (2) and (3) of Penal Code section 415.

## VIII

### *The Issue of Prosecutorial Misconduct*

Defendants Patino and Walton assert that the prosecutor committed prejudicial misconduct in his closing argument to the jury. The conduct of which these defendants complain consists of a quotation contained in the prosecutor's final argument. The prosecutor told the jury that a quotation from a famous judge presented the prosecutor's side of the case. The prosecutor then read the following quotation: "Under our procedure, the accused has every advantage. While the prosecution is held rigidly to the charge, he need not disclose even the barest outline of his defense. [¶] He may not be convicted when there is the least fair doubt in the mind of even one juror. Our procedure has always been haunted by the ghost of the innocent man convicted. It is an unreal dream. [¶]What we really need to fear is the archaic formalism and watery sentiment that obstruct, delay, and defeat the prosecution of crime."

The principle of prosecutorial misconduct has been set forth by the decisional law in the following terms: "Prosecutorial misconduct implies the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury. [Citation.] The ultimate question to be decided is, had the prosecutor refrained from the misconduct, is it reasonably probable that a result more favorable to the defendant would have occurred. [Citations.]" (*People* v. *Strickland* (1974) 11 Cal.3d 946, 955 [114 Cal.Rptr. 632, 523 P.2d 672].)

Defendants Patino and Walton contend that this quotation used by the prosecutor in his final argument comes within the principle of prosecutorial misconduct. These two defendants assert that the quotation suggests to the jury that, since the defense is given an advantage over the prosecution, the jury should equalize that advantage by finding the defendant guilty, irrespective of the evidence in the case. These defendants also criticize the quotation as suggesting to the jury that the presumption of innocence and the reasonable doubt standard are inappropriate because they are based on the unrealistic spector of an innocent man becoming convicted. The third suggestion of error in the prosecutor's quotation is that, in stating that we need to fear "archaic formalism and watery sentiment that obstruct, delay, and defeat the prosecution of crime," the jury might obtain the impression that the trial judge's instructions on the law fall within that description.

The People seek to justify the prosecutor's argument as not coming within the definition of prosecutorial misconduct. The People urge us to hold that the challenged quotation is not of such a nature that one could squarely label it as misconduct. We are surprised and troubled that the People on this appeal would even attempt to uphold the prosecution's action as not constituting prosecutorial misconduct. It is patently clear that the quotation used by the prosecutor does *not* come within the concept of a fair comment on the evidence or a fair statement of the law applicable to the case. The quotation appears clearly designed to persuade the jury by means that are deceptive and reprehensible. There is absolutely no justification or excuse for the prosecutor's use of this quotation which constitutes an attack upon our criminal justice system and the laws regulating that system which have been set forth both by the constitutional, legislative and decisional law. We thus condemn the prosecutor's action in no uncertain terms.

Unfortunately, however, our condemnation of the prosecutor cannot deter us from applying the accepted principle of law of making a determination of whether the misconduct was sufficiently prejudicial to require a reversal of the convictions of defendants. We must thus consider the error occurring below from the standpoint of whether it is reasonably probable that a result more favorable to the defendants would have occurred in the absence of the error. (*People* v. *Watson* (1956) 46 Cal.2d 818, 835 [299 P.2d 243].) In spite of our holding that the prosecutor's actions constituted reprehensible misconduct, our review of the entire record leads us to conclude that a more favorable result to defendants would not have taken place even if the prosecutor had not committed the

misconduct of reading the quoted statement to the jury. The evidence against defendants was more than substantial. It was overwhelming in nature.

We cannot stress too emphatically, however, that the prosecutorial misconduct that occurred in the case at bench should *never* occur. Such conduct constitutes a total disservice to the criminal justice system even though, under the particular circumstances of the case at hand, it cannot have the effect of causing a reversal of defendants' convictions because of the otherwise strong nature of the prosecution's case against the defendants.

IX

*Was There a Duty on the Trial Court,*
*Sua Sponte, to Grant Each Defendant*
*a Separate Trial?*

 Defendant De La Torre asserts that the trial judge abused his discretion in failing to order a separate trial for each of the codefendants. Defendant De La Torre relies upon Penal Code section 1098, which provides: "When two or more defendants are jointly charged with any public offense, whether felony or misdemeanor, they must be tried jointly, unless the court order separate trials. In ordering separate trials, the court in its discretion may order a separate trial as to one or more defendants, and a joint trial as to the others, or may order any number of the defendants to be tried at one trial, and any number of the others at different trials, or may order a separate trial for each defendant; provided, that where two or more persons can be jointly tried, the fact that separate accusatory pleadings were filed shall not prevent their joint trial."

This defendant recognizes that, generally, a motion for severance is made by a particular defendant. But in the case before us, no defendant made such a motion. Although Penal Code section 1098 does *not* expressly require that a motion be made by a defendant, the argument is advanced that the trial court, in the interests of fairness, should have, *sua sponte,* ordered separate trials for each of the six defendants.

Defendant De La Torre asserts that the circumstances established that he did not know any of the other individuals involved in the events occurring in the morning hours of May 27, 1977, except the defendant

Patino. It is De La Torre's position that the prejudicial effect upon him resulting from a joint trial was insurmountable, since the People's evidence established that a defendant other than De La Torre committed a battery upon one of the police officers with other defendants throwing objects. The point is made that since the defense presented by De La Torre was to the effect that he was not a part of the threatening crowd advancing upon the officers, but was seeking to help the police and insure that no one was going to get hurt, it could not reasonably be expected that the jury could properly appraise his defense in a joint trial with all of the other defendants.

The People's response to defendant De La Torre's assertion regarding a severance of trial is that "[a] failure to request a severance constitutes a waiver which will not be reviewed on appeal." (*People* v. *Gonzales* (1970) 4 Cal.App.3d 593, 604 [84 Cal.Rptr. 863].) The *Gonzales* court relies for its view of waiver on *People* v. *Santo* (1954) 43 Cal.2d 319 [273 P.2d 249]. In *Santo,* the court stated: "A defendant is not entitled as a matter of right to a separate trial." (*Id.,* at p. 332.) The *Santo* court also stated: "Furthermore, the record here fails to disclose that defendant Graham moved for a severance." (*Id.,* at p. 332.) In *People* v. *Martin* (1971) 17 Cal.App.3d 661, 671 [95 Cal.Rptr. 250], the court observed that, since no motion for severance was made, "the trial court was not compelled to grant a severance on its own motion."

We do not believe that the *Santo* court was asserting the view that a failure of a defendant to make a motion for severance automatically constitutes a waiver to preclude consideration on appeal of the question of whether the trial judge abused his discretion in failing to order, *sua sponte,* a separate trial for a particular defendant. Certainly the California Legislature has expressed a general preference for joint trials and the matter of granting separate trials is one that is largely within the discretion of the trial court. (See *People* v. *Graham* (1969) 71 Cal.2d 303 [78 Cal.Rptr. 217, 455 P.2d 153].)

In setting forth the rules for the exercise of discretion, the *Graham* court made this significant statement: "Moreover, the trial court should grant a severance 'if it can be shown that the [prosecution's] insistence on joint trial was not in good faith, or that it was solely for the purpose of obtaining an otherwise illegal delay, or to take unfair advantage of the defendants, or was not reasonably predicated upon the purpose and intent of the statute which grants the right to try the defendants jointly.' [Citation.]" (*Id.,* at p. 330.)

■ If a codefendant does not make a motion for a separate trial, he must assume the burden of convincing the appellate court that the trial court committed an abuse of discretion in not, *sua sponte,* ordering a separate trial for him. ■ Although we consider that circumstances may be such that the trial judge commits an abuse of discretion in not ordering, *sua sponte,* a separate trial for a codefendant who has failed to make a motion for a separate trial, defendant De La Torre makes no showing that the instant case presents such a situation. Our review of the evidence does not lead us to conclude that defendant De La Torre suffered any prejudice by virtue of a joint trial with five other codefendants.

The judgments of conviction are affirmed.

Kingsley, Acting P. J., and Alarcon, J., concurred.

A petition for a rehearing was denied August 1, 1979. Alarcon, J., was of the opinion that the petition should be granted. The petitions of appellants and respondent for a hearing by the Supreme Court were denied September 12, 1979.