115 Cal.App.3d 515 (1981)
171 Cal. Rptr. 312
THE PEOPLE, Plaintiff and Respondent,
v.
WILLIE HAMPTON, Defendant and Appellant.
Docket No. 20829.
Court of Appeals of California, First District, Division Four.
January 29, 1981.
*518 COUNSEL
Alan G. Rodier, under appointment by the Court of Appeal, for Defendant and Appellant.
George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Gloria F. DeHart and Thomas A. Brady, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
CHRISTIAN, J.
Willie Hampton appeals from a judgment of imprisonment rendered after a jury found him guilty of possession for sale of marijuana (Health & Saf. Code, § 11359).
*519 On May 21, 1979, a plant quarantine inspector opened a footlocker at Honolulu International Airport during a routine check of air cargo destined for San Francisco. Inside the footlocker were black plastic garbage bags; in the garbage bags were smaller plastic bags containing what appeared to be marijuana. The plant inspector moved the footlocker to the cargo manager's office and the police were summoned. A Honolulu police detective arrived and determined that the bags did contain marijuana. He informed the San Mateo County Sheriff's office, and arranged for the air carrier to proceed with shipment of the footlocker to the San Francisco International Airport.
Detective Hefner of the San Mateo County Sheriff's office met the flight and took possession of the footlocker. Hefner took the footlocker to the South San Francisco Police Department where he opened it, finding what appeared to be marijuana; he closed the locker and returned it to the air freight forwarder's office. In due course appellant arrived, identified himself as the consignee, and paid the freight charges due. As appellant had a full cast on his left arm, Hefner carried the footlocker to appellant's car. While moving the footlocker, Hefner indicated that he had knowledge of the contents and that the odor was a "dead giveaway." Hefner told appellant that the manager would call the police if he knew what was inside; appellant replied, "Man, that's cold." Hefner put the footlocker in the trunk and appellant slammed the trunk shut. Hefner then arrested appellant. The footlocker contained 10.47 pounds of marijuana.
Appellant contends that the trial court should have granted his motions to set aside the information (Pen. Code, § 995) and to suppress evidence (Pen. Code, § 1538.5) because the warrantless search and seizure of the footlocker in San Mateo was unlawful. Appellant argues that the concededly proper search in Hawaii did not authorize any further search once the footlocker was resealed and placed in transit.
(1) Under the Fourth Amendment of the United States Constitution, warrantless searches are per se unreasonable, absent any recognized exception. (Arkansas v. Sanders (1979) 442 U.S. 753, 758 [61 L.Ed.2d 235, 241, 99 S.Ct. 2586]; Mincey v. Arizona (1978) 437 U.S. 385, 390 [57 L.Ed.2d 290, 298-299, 98 S.Ct. 2408]; Katz v. United States (1967) 389 U.S. 347, 357 [19 L.Ed.2d 576, 585, 88 S.Ct. 507]; People v. Dalton (1979) 24 Cal.3d 850, 855 [157 Cal. Rptr. 497, 598 P.2d 467]; People v. Minjares (1979) 24 Cal.3d 410, 416 [153 *520 Cal. Rptr. 224, 591 P.2d 514].) (2) The reasonableness of a search or seizure must be decided on a case-by-case basis. "`... Each case must be decided on its own facts ... and on the total atmosphere of the case....'" (People v. Superior Court (Kiefer) (1970) 3 Cal.3d 807, 827 [91 Cal. Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559]; People v. Ingle (1960) 53 Cal.2d 407, 412 [2 Cal. Rptr. 14, 348 P.2d 577]; People v. Newell (1979) 93 Cal. App.3d 29, 36 [155 Cal. Rptr. 430].)
Here, the opening of the footlocker in Hawaii by an agricultural inspector was authorized by federal law.[1] Appellant does not question the lawfulness of that inspection. (3) A warrant is not required for such an inspection, where no police authority or criminal detection was involved. (See People v. McKinnon (1972) 7 Cal.3d 899, 914-915 [103 Cal. Rptr. 897, 500 P.2d 1097], cert. den. 411 U.S. 931 [36 L.Ed.2d 390, 93 S.Ct. 1891]; People v. Dickinson (1980) 104 Cal. App.3d 505, 511-512 [163 Cal. Rptr. 575]; State v. Bailey (1978) 120 Ariz. 399, 401 [586 P.2d 648, 650].)
Once the inspector opened the footlocker and suspected that it contained contraband, he called the Honolulu police. Police officers viewed the open footlocker and its contents. Appellant admits that it was not a Fourth Amendment violation for the Honolulu police to see the contraband in plain view. (See United States v. Rodriguez (6th Cir.1979) 596 F.2d 169, 175.) (4) If a police officer is in a place where he has a right to be, seizure of evidence reasonably believed to be evidence of a crime is proper. (Harris v. United States (1968) 390 U.S. 234, 236 [19 L.Ed.2d 1067, 1069, 88 S.Ct. 992]; Lorenzana v. Superior Court (1973) 9 Cal.3d 626, 634 [108 Cal. Rptr. 585, 511 P.2d 33]; People v. Block (1971) 6 Cal.3d 239, 243 [103 Cal. Rptr. 281, 499 P.2d 961]; People v. Stamper (1980) 106 Cal. App.3d 301, 305 [164 Cal. Rptr. *521 861]; People v. Kilpatrick (1980) 105 Cal. App.3d 401, 409 [164 Cal. Rptr. 349].)
(5a) The question thus becomes whether the seizure of the footlocker after shipment from Hawaii and the inspection of its contents by the San Mateo County Sheriff prior to delivery to appellant were unreasonable. Appellant relies on United States v. Chadwick (1977) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476], and People v. Minjares, supra, 24 Cal.3d 410, in support of his argument that the San Mateo police should have obtained a search warrant before seizing the footlocker and examining its contents. Although Chadwick and Minjares involved the validity of a warrantless search and seizure of luggage, the circumstances of those cases are radically different from ours. In both Chadwick and Minjares the luggage was seized and searched while the suspect was in custody; additionally, no exigent circumstances existed to justify the search. (People v. Minjares, supra, 24 Cal.3d 410, 419.) In Chadwick, the Supreme Court held to be unlawful the warrantless search of a footlocker in the exclusive control of federal agents when the possessors of the trunk had already been arrested. In Minjares, the California Supreme Court condemned the warrantless search and seizure of a tote bag found within the defendant's automobile after his arrest and after the automobile had been towed to the city yard. By contrast, the San Mateo County officer took charge of the shipment before appellant had been arrested and under circumstances which demanded immediate action. Once the Honolulu police confirmed the nature of the shipment, it was put back in transit in order to facilitate discovery of the intended recipient. Controlled deliveries are used in narcotics cases with judicial approval. (6) It is proper for the authorities to permit a package of known contraband to be delivered to its intended recipient for the purpose of discovering narcotics importers. (People v. Mathews (1980) 112 Cal. App.3d 11, 23 [169 Cal. Rptr. 263]; People v. Shapiro (1974) 37 Cal. App.3d 1038, 1043 [113 Cal. Rptr. 54]; People v. Kosoff (1973) 34 Cal. App.3d 920, 932-933 [110 Cal. Rptr. 391].) (5b) Here, the joint efforts of the two police departments led to the controlled delivery of the marijuana to appellant. The seizure of the footlocker at the airport to secure the contraband and the subsequent search to confirm the findings of the Honolulu police were in furtherance of the controlled delivery and were no more intrusive than the proper search and seizure in Hawaii. The search and seizure by the Honolulu police was proper under the plain view doctrine; the actions of the San Mateo police were a continuation of proper activities of the police, in which the contraband effectively remained under police *522 control at all times after the discovery in Hawaii. (See United States v. Andrews (10th Cir.1980) 618 F.2d 646, 651; United States v. Bulgier (7th Cir.1980) 618 F.2d 472, 477-478; United States v. Ford (10th Cir.1975) 525 F.2d 1308; United States v. DeBerry (2d Cir.1973) 487 F.2d 448.)
Appellant attempts to distinguish Ford and DeBerry, pointing out that the police in Ford and DeBerry marked the packages and put business cards inside, while in the present case this procedure was not followed. No such marking is required by law (See United States v. Andrews, supra, 618 F.2d 646, 648; also see People v. Riegler (1980) 111 Cal. App.3d 580, 589 [168 Cal. Rptr. 816].)
(7a) Appellant contends that the trial court should have granted a defense motion for acquittal (Pen. Code, § 1118.1) because the prosecution failed to establish appellant's knowledge of the footlocker contents, a necessary element of the offense charged; he further argues that the prosecution failed to demonstrate that he exercised dominion and control over the drug. (8) In order to establish unlawful possession of narcotics, the evidence must show that the accused exercised dominion and control over the drug with knowledge of its presence and narcotic character. (People v. Williams (1971) 5 Cal.3d 211, 215 [95 Cal. Rptr. 530, 485 P.2d 1146]; People v. Redrick (1961) 55 Cal.2d 282, 285 [10 Cal. Rptr. 823, 359 P.2d 255]; People v. Maese (1980) 105 Cal. App.3d 710, 716-717 [164 Cal. Rptr. 485]; People v. Jenkins (1979) 91 Cal. App.3d 579, 583 [154 Cal. Rptr. 309].) The elements of unlawful possession may be proved by circumstantial evidence and reasonable inferences drawn from such evidence. (People v. Williams, supra, 5 Cal.3d 211, 215; People v. White (1969) 71 Cal.2d 80, 83 [75 Cal. Rptr. 208, 450 P.2d 600].) (9) A trial court faced with a motion under Penal Code section 1118.1 must apply the test utilized by an appellate court in reviewing a judgment of conviction, i.e., whether there is substantial evidence of the existence of each element of the offense charged. (People v. Blair (1979) 25 Cal.3d 640, 666 [159 Cal. Rptr. 818, 602 P.2d 738]; People v. Patino (1979) 95 Cal. App.3d 11, 27 [156 Cal. Rptr. 815]; People v. Wong (1973) 35 Cal. App.3d 812, 828 [111 Cal. Rptr. 314].) On review of the trial court's denial of a motion for acquittal, this court must assume in favor of the order the existence of every fact from which the jury reasonably could have inferred that the offense charged was committed and that it was perpetrated by the person charged with the offense. People v. Patino, supra, 95 Cal. App.3d 11, 27; People v. Wong, supra, 35 Cal. App.3d 812, 828.)
*523 (7b) Appellant's contention that he did not exercise dominion or control over the footlocker because he did not carry it is without merit. Possession does not require actual physical contact; constructive possession is sufficient. (People v. Williams, supra, 5 Cal.3d 211, 215; People v. Newman (1971) 5 Cal.3d 48, 52 [95 Cal. Rptr. 12, 484 P.2d 1356], overruled on other grounds in People v. Daniels (1975) 14 Cal.3d 857, 862 [122 Cal. Rptr. 872, 537 P.2d 1232].) Appellant controlled the footlocker by asserting that it was his, paying the freight charges and directing its placement in his automobile. There was substantial evidence that he possessed the footlocker containing the drugs. His physical disability did not prevent his exercise of dominion or control over the narcotics.
People v. Mijares (1971) 6 Cal.3d 415 [99 Cal. Rptr. 139, 491 P.2d 1115], cited by appellant for the proposition that momentary contact with a narcotic does not necessarily constitute possession, is to be distinguished. The accused in Mijares momentarily possessed the drug in order to throw it away; the accused took the drug from his friend and tossed it into a field. In the present case, there is no evidence that appellant took possession in order to get rid of the drugs. (See People v. Mijares, supra, 6 Cal.3d 415, 423.) Appellant also cites People v. Kosoff, supra, 34 Cal. App.3d 920, in support of his momentary possession argument. But the court in Kosoff did not examine issues relating to knowledge and intent in possession. (People v. Kosoff, supra, 34 Cal. App.3d 920, 933.)
Knowledge of the presence and character of the drug was also sufficiently demonstrated. Detective Hefner advised appellant that the footlocker contained marijuana and that the freight manager would summon the police if he knew the actual contents. Appellant replied that such a call would be "cold." Appellant then had the locker placed in his car and slammed the trunk. Appellant was nervous when he picked up the locker. This evidence supports the inference that appellant knew the contents of the trunk; thus, the question was properly submitted to the jury.
The judgment is affirmed.
Caldecott, P.J., and Poche, J., concurred.
Appellant's petition for a hearing by the Supreme Court was denied March 25, 1981. Bird, C.J., was of the opinion that the petition should be granted.
NOTES
[1] Title 7 United States Code, section 161, provides in part: "The Secretary of Agriculture is authorized and directed to quarantine any State, Territory, or District of the United States, or any portion thereof, when he shall determine that such quarantine is necessary to prevent the spread of a dangerous plant disease or insect infestation, new to or not theretofore widely prevalent or distributed within and throughout the United States.... It shall be the duty of the Secretary of Agriculture, when the public interests will permit, to make and promulgate rules and regulations which shall permit and govern the inspection, disinfection, certification, and method and manner of delivery and shipment of the class of nursery stock or of any other class of plants, fruits, vegetables, roots, bulbs, seeds, or other plant products, ... capable of carrying any dangerous plant disease or insect infestation, specified in the notice of quarantine hereinbefore provided, and regardless of the use for which the same is intended, from a quarantined State ... into or through any other State...." Implementing regulations issued by the Secretary of Agriculture appear in 7 Code of Federal Regulations sections 318.13(a)-(b), 318.13-12(a)-(b) (1980).