**STATE of Missouri,
Plaintiff-Respondent,**

v.

**John William FARMER,
Defendant-Appellant.**

**No. 11308.**

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 11, 1981.

Rehearing Denied March 5, 1981.

Application to Transfer Denied
April 6, 1981.

442

John D. Ashcroft, Atty. Gen., Neil MacFarlane and Thomas G. Auffenberg, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

Paul L. Bradshaw, John D. Compton, Larry K. Bratvold, Neale, Newman, Bradshaw & Freeman, Springfield, Emory Melton, Cassville, for defendant-appellant.

PREWITT, Presiding Judge.

Defendant was charged with violating § 561.011, RSMo 1969, in that he did "utter as true and genuine" a forged will. A jury found him guilty of "forgery" and assessed a fine of $1,000 as punishment. Appellant appealed to the Supreme Court of Missouri. That court transferred the appeal to this district of the Missouri Court of Appeals "in which jurisdiction is vested". Thereafter, defendant filed an application with the Supreme Court requesting transfer before opinion pursuant to Article V, Section 10, of the Missouri Constitution. That application was denied.

Defendant presents two points for our review: (1) error in the state's submission instruction because it (a) allowed the jury to convict defendant of forgery when he was charged with "Uttering" a forged instrument; (b) omitted the element "Intent to Defraud"; and was (c) "Inaccurate, Confusing, Misleading and Was an Incorrect Statement of the Law"; and (2) that the trial court should have directed a verdict of acquittal because the only evidence concerning "the Authenticity of the Questioned Will Consisted of Opinion Testimony, and a Criminal Conviction Cannot Be Based Solely on Uncorroborated Opinion Testimony".

The evidence is presented to us by an agreed statement which says:

"8. The following is a summary of the evidence presented by the state:

Nona A. Collier of Golden City, Missouri, died March 1, 1975. On March 5, 1975, the defendant produced to an attorney, Edison Kaderly, for filing with the Probate Court, a document dated December 7, 1974, which purported to be her last will and testament. An Affidavit as to Death and Application for Probate of Will was prepared, and the appellant, after being duly sworn, affixed his signature. Those documents were filed in the Probate Court of Barton County, Missouri. Another handwritten document, also purporting to be the last will of Nona Collier, had been filed in that court on March 4, 1975. Said document was dated September 5, 1972.

To support its charge that the defendant submitted a forged document for probate, the State introduced, in addition to the will of Nona Collier dated September 5, 1972, five other purported handwriting exemplars of the deceased. A witness to Mrs. Collier's signature on the earlier will, the vice president of a bank, testified he observed her affix her signature and, in fact, had put her under oath and notarized the same. He also identified a bank note with her purported signature, dated December 9, 1974, although he had not seen her sign it. The other four handwriting exemplars of the deceased, contained on letters and envelopes received by members of her family in 1972 and 1973, and bearing her purported signature, were identified by her sister, Mrs. Flora Slack, with whom she had corresponded regularly, as being, in fact, Mrs. Collier's signature. However, Mrs. Slack had not seen Mrs. Collier sign those pieces of correspondence. On cross-examination, the State's handwriting experts testified there would not have been a sufficient number of handwriting exemplars for them to arrive at their opinions without using the four exemplars identified by the deceased's sister.

Two handwriting experts, William Storer of St. Louis, Missouri, and August

Nilges, who works at the Highway Patrol Headquarters in Jefferson City, Missouri, were called by the State and established to be experts in the area of document examination. Both testified they analyzed the purported handwriting exemplars of the deceased, concluded they had been written by the same person, compared them with the document submitted by the appellant, and concluded that person had neither written nor signed the alleged will. They further testified they analyzed the known signatures of the appellant, taken from the affidavit mentioned above and several other documents filed in court, and concluded he had written his signature as it appeared in the body of the alleged will. They did not have sufficient handwriting exemplars of the appellant to conclude whether he had written the remainder of the document.

In addition to the expert opinions the jury was allowed to view the handwriting exemplars, the questioned document purporting to be a will, and fair and accurate photographic enlargements of the exemplars and of the questioned signature.

9. The following is a summary of the evidence presented by the defendant:

The defendant, a widower, who was 86 years old at the time of the trial, had known Mrs. Collier for several years. She was in her late 60's at the time of her death and was unmarried. The defendant testified he aided Mrs. Collier in her business affairs and also saw her frequently on a social basis.

According to the defendant's testimony, Mrs. Collier told him she wanted him to help write a new will because she did not want to pay a lawyer to prepare one and she wanted to leave much of her property to him. He said he wrote the body of the will (copying from an old will in an estate of which he was executor) and left if with Mrs. Collier. He said that two days later she returned it to him, bearing her purported signature and those of three attesting witnesses.

The three attesting witnesses—Herbert Stump, Bill Johnson and Chester Pyle—testified that they had, in fact, witnessed

Mrs. Collier sign the will. On cross-examination Stump and Johnson admitted they were long time friends and political allies of the defendant but, although each of the three had testified they witnessed the signing of the will in the deceased's living room, they either were unable to describe the location and type of the furniture located therein or gave somewhat differing descriptions thereof, and gave conflicting testimony as to whether the deceased had any pets or fish tanks.

Mr. Edison Kaderly, a practicing attorney in Lamar, Missouri, who testified for the State, said on cross-examination that Mrs. Collier had wanted him to prepare a new will for her but wanted him to do so without charge because they both were members of the same political party. He declined to do so. He also testified that he had seen Mrs. Collier and defendant together on numerous occasions.

Mr. Max Faust, a practicing attorney in Kansas City, but a native of Cedar County, said he had handled legal business for both defendant and Mrs. Collier and often had seen them together. He said Mrs. Collier always complained about paying legal bills. She talked to him about making a new will but he did not do so.

Mr. Clark Montgomery, a farmer in Cedar County, testified that he was present in the office of a notary public (who is now deceased) in Lockwood, Missouri when the defendant and Mrs. Collier asked the notary if he had a form they could use to write a new will for Mrs. Collier.

Two handwriting experts—Mr. John Craig of Springfield, Missouri, and Mrs. Jessie Wills of Tulsa, Oklahoma—testified that they had compared the signature on the purported will with the above-mentioned exemplars produced by the State, and they concluded that the questioned will was, in fact, signed by Mrs. Collier.

On cross-examination Mr. Craig testified he spent most of his time as a professional photographer, and Mrs. Wills testi-

fied that although she had long studied handwriting as a graphologist, and had been so certified for many years, she had only held herself out as a document examiner for the past few years. Both testified they had never met and did not know the deceased, but explained the differences in handwriting between the known exemplars of the deceased and the document proffered by the appellant by stating arthritis can alter one's handwriting."

We initially consider defendant's first point. The state's submission instruction followed MAI–CR 10.14(a) and defendant's brief admits that it was "the instruction intended for use in this type of case". He acknowledges that this point "involves the question of whether an instruction heretofore approved by our Supreme Court is correct under the facts of this case." Defendant doubts our jurisdiction to invalidate an instruction so approved and asks us to transfer the case to the Supreme Court. He appears to be correct that we are powerless to declare erroneous a pattern criminal instruction contained in MAI–CR if its use was there required. See *State v. Washington*, 570 S.W.2d 838, 843 (Mo.App.1978); *State v. Burton*, 544 S.W.2d 60, 64 (Mo.App. 1976); *State v. Gilyard*, 523 S.W.2d 564, 568 (Mo.App.1975); *State v. Yeokum*, 516 S.W.2d 535, 537 (Mo.App.1974). However, as we believe that the instruction was proper and was not prejudicial to defendant, we decline to transfer.

Under some statutes, one who either forges, utters, or passes a forged instrument is guilty of forgery. 37 C.J.S. Forgery § 1, p. 32. In approving this instruction, the Supreme Court apparently considered that to be so under § 561.011, RSMo 1969. That appeared to be the rule in Missouri under a prior forgery statute. See *State v. White*, 271 S.W.2d 530 (Mo. 1954). That would also appear to be the rule under the present statute, § 570.090, RSMo 1978. We believe that forgery is among those crimes that may be committed in various ways. See *State v. Hartman*, 364 Mo. 1109, 273 S.W.2d 198, 203 (banc 1954).

However, whether uttering a forged document and forgery are separate crimes makes no difference as we presume that the jury found the elements necessary for uttering a forged writing as those elements were contained in the instruction. If the language following the required elements stating "then you will find the defendant guilty of forgery" makes any difference, it would be to defendant's benefit and not to his prejudice. That language might infer to the jury that they must find that defendant forged the decedent's signature; a finding not necessary here, but one which would put a greater burden upon the state than required.

An instruction which follows MAI–CR 10.14(a) has been held to sufficiently require the jury to make a finding of intent to defraud. *State v. Bland*, 565 S.W.2d 735, 736–737 (Mo.App.1978). See also *State v. Washington*, supra, 570 S.W.2d at 844. Defendant attempts to distinguish *Bland* because there paragraph "First" of the instruction used "possessed with intent to offer as true" but here "offered as true" was used. However, the use of "intent" in the *Bland* instruction was not the basis of the court's holding. We agree with the reasoning there and find it applicable here. Defendant advances no other reasons why the instruction was "inaccurate, confusing, misleading" or "an incorrect statement of law". We believe it was a proper instruction in this case and could not have been prejudicially erroneous. Point one is denied.

We now consider defendant's second point. As a part of this point defendant claims that the opinion evidence of decedent's sister is insufficient to establish the genuineness of decedent's handwriting on the letters and envelopes received by members of her family in 1972 and 1973. Four such examples of the decedent's handwriting were identified by her sister. The sister had not seen the decedent sign those pieces of correspondence, but they had "corresponded regularly". The state's handwriting experts testified that there would not have been a sufficient number of handwrit-

ing "exemplars" for them to determine if the will was signed by the deceased were it not for these examples. Defendant cites *Rauenzahn v. Sigman*, 383 Pa. 439, 119 A.2d 312, 313 (1956), contending that in order to authorize a comparison of handwriting, the exemplars must be identified "by a person who saw the party sign the standard, or of an admission by such party of its genuineness, or evidence of equal authority". We do not believe that decision is persuasive in view of Missouri's statute on the subject.

Section 490.640 RMSo 1969, provides:

"Comparison of a disputed writing with any writing proved to the satisfaction of the judge to be genuine shall be permitted to be made by witnesses, and such writings and the evidence of witnesses respecting the same may be submitted to the court and jury as evidence of the genuineness or otherwise of the writing in dispute."

■ This statute implies that a trial judge would have considerable discretion in deciding what writings should be available for comparison, and it was so held in *State v. Clark*, 552 S.W.2d 256, 264 (Mo.App.1977). In *Clark* the court held that letters and other documents may be shown to be in a person's handwriting by either direct or circumstantial evidence. The evidence before us appears to be at least as substantial as that in *Clark*. We hold that the evidence was sufficient to show that it was the decedent's signature on the letters and envelopes in evidence. See also *Estate of Fedina v. Fedina*, 491 S.W.2d 552, 559 (Mo. 1973); *McLendon v. Leighty*, 320 S.W.2d 735, 737 (Mo.App.1959); Annotation "Mode and degree of proof required to establish genuineness of handwriting offered as standard or exemplar for comparison with a disputed writing or signature", 41 A.L.R.2d 575, 586 (opinion evidence), 592 (mailing or receipt of letter).

■ Defendant also contends that the state's case fails because it was based upon the combined opinion testimony of the decedent's sister and the handwriting experts. Defendant states that no one should be convicted of a crime "merely because some-

one is of the opinion that he is guilty." However, the record does not disclose that anyone gave an opinion that defendant was guilty. The opinion was limited to whether or not the decedent signed the will. Defendant cites *State v. Varnes*, 67 Idaho 183, 174 P.2d 200 (1946), and *De Vere v. State*, 100 Tex.Cr.R. 61, 271 S.W. 912 (1925), in contending that a "Criminal Conviction Cannot Be Based Solely on Uncorroborated Opinion Testimony." Those cases are distinguishable from the present situation but we see no point in setting out the differences as those decisions are not binding upon us.

■ In *State v. Gantt*, 504 S.W.2d 295, 299 (Mo.App.1973), a widow's opinion that it was not her deceased husband's signature was held "substantial proof" that a check did not contain his signature. *United States v. Duck*, 423 F.2d 1200 (4th Cir. 1970), held that testimony of a handwriting expert alone was sufficient to sustain a conviction for forging an endorsement. See also *United States v. Sanders*, 412 F.2d 854, 856 (5th Cir. 1969), and *State v. Cooper*, 180 N.W.2d 424, 425 (Iowa 1970). We believe that the better rule is to hold that the expert testimony was substantial evidence that decedent did not sign the will and that it was for the jury to determine the weight to be given such testimony. Point two is denied.

The judgment is affirmed.

HOGAN and BILLINGS, JJ., concur.

MAUS, J., recused.