STATE of Missouri,
Plaintiff–Respondent,

v.

Kathryn Ann RILEY,
Defendant–Appellant.

No. 15321.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 3, 1988.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Thomas E. Klinginsmith, Carthage, for defendant-appellant.

GREENE, Judge.

Kathryn Ann Riley was charged with, and jury-convicted of the class C felony of forgery, § 570.090.1(1),[1] and was court-sentenced as a prior offender to two years' imprisonment in the custody of the Missouri Department of Corrections as punishment for the crime.

The statute in question provides that "[a] person commits the crime of forgery if, with the purpose to defraud, he (1) [m]akes, completes, alters or authenticates any writing so that it purports to have been made by another or at another time or place or in a numbered sequence other than was in fact the case or with different terms or by authority of one who did not give such authority." § 570.090.1(1). The information charging Mrs. Riley with the crime states "the defendant, with the purpose to defraud, made a writing, to-wit: an endorsement on a check so that it purported to have been made by another."

Viewed in the light most favorable to uphold the conviction, the evidence was as follows. Kathryn Riley, a divorcee, had custody of her 15 year-old son, Jerry Matthew Riley, and lived with him in a mobile home in Carthage, Missouri. Jerry was a student at Carthage Junior High School, and had a part-time job as a carrier with the local newspaper, which is known as the Carthage Press. As a part of his written carrier agreement, Jerry agreed the paper would withhold $5 a month from the amount it owed Jerry for his services until a total of $90 had been accumulated. This money was security that Jerry would pay the Carthage Press all monies he owed it for the purchase of newspapers that he sold on his route. Since he was a minor,

---

1. Unless indicated otherwise, all references to    statutes are to RSMo 1986, V.A.M.S.

Jerry's mother was required to sign the agreement and guarantee payment of Jerry's obligations to the newspaper in the event the amounts in the bond account were insufficient to pay Jerry's obligation.

For some reason not explained in the record, the $5 per month withholdings were not discontinued after $90 had been accumulated in the bond account, and by January of 1987, $180 was in the account. About January 25, 1987, Jerry, who was dissatisfied with living conditions, ran away from home. He was later apprehended and placed in juvenile detention regarding an incident involving a concealed weapon, the nature of which is not explained in the record. On January 28, Mrs. Riley contacted Winston Belisle, the circulation manager for the Carthage Press, and told him she needed the money in the bond account in order to retain a lawyer for Jerry. Belisle agreed to give her $90, as the carrier contract provided that only $90 could be retained by the newspaper to secure payment of Jerry's obligations.

A check was issued in the amount of $90, made payable to Jerry Riley, and was given to Mrs. Riley. She took the check to the Southtown Bank of Carthage, where she had banked since 1965, and, after explaining to the teller that Jerry was in juvenile detention, endorsed his name on the back of the check, and, at the request of the teller, followed that endorsement with her own signature. The teller then gave Mrs. Riley $90. She did not use the $90 as a payment on attorney fees, but spent it for food.

Jerry was represented by the public defender, and was placed on probation by the juvenile court. After his release from custody, Jerry went to live with an older brother. When he found out that his mother had received the $90 from the bond account, Jerry complained to the authorities. This prosecution followed. At trial, Jerry testified that he did not give his mother authority to endorse his name on the check.

On appeal, Mrs. Riley contends the trial court erred in denying her motion for judgment of acquittal filed at the close of all of the evidence because there was insufficient evidence to prove she was guilty of the crime of forgery.

■ The state was required to prove not only that Mrs. Riley received the money from the bank, by reason of endorsing her son's name on the check without his authority to do so, but that she did it with an intent to defraud. Intent to defraud is an element of the crime of forgery, and must be averred and proved. *State v. Boley*, 565 S.W.2d 828, 831, (Mo.App.1978). While such intent may be, and usually is, inferred from the circumstances, rather than being supplied by direct proof, such circumstances must be consistent with each other and with the theory of guilt, and inconsistent with any reasonable theory of innocence. *State v. McGowan*, 636 S.W.2d 354, 356 (Mo.App.1982).

■ Here, Mrs. Riley did not represent to anyone that her son, Jerry, had executed the endorsement in question. All of the evidence points to the fact that she, as her minor son's agent, endorsed the check in his behalf. The fact that she had no authority from him to sign his name, as principal, followed by her name as agent, does not make her actions a forgery. *State v. Kinder*, 315 Mo. 1314, 290 S.W. 130, 131 (Mo.1926).

While false and fraudulent assumption of authority may, in some circumstances not present here, make one liable to prosecution under obtaining money by means of false pretenses statutes, *Kinder*, supra, 290 S.W. p. 131, *State v. Miller*, 292 S.W. 440, 441 (Mo.1927), there was no proof that Mrs. Riley deceived, or intended to deceive, anyone when she endorsed the check in Jerry's name.

Another problem that needs to be addressed is the fact that at the time of the transaction in question, Jerry Riley was a minor, and in the custody of his mother. As his mother and custodian, she had the sole right to his earnings, § 452.150, and the amounts in the bank account, over and above the $90 withheld by the Carthage Press, legally belonged to Mrs. Riley subject to any fiduciary responsibility that

may be owed to Jerry. *Kubatzky v. Ramada Inns, Inc.,* 632 S.W.2d 73, 75–76 (Mo.App.1982); *Yates v. Brown,* 218 S.W. 895, 897 (Mo.App.1920); § 452.150, and § 475.025.

Since the money received from the bank was legally hers anyway, it was impossible for her to deceive anyone by obtaining it under the procedure utilized here. The state produced no proof from which a jury could reasonably find, even by inference, that Kathryn Riley endorsed the check with the purpose to defraud anyone; therefore, the conviction cannot stand.

The judgment of the trial court is reversed, and the defendant is ordered discharged.

HOLSTEIN, C.J., and CROW, P.J., concur.