STATE of Missouri, Plaintiff–Respondent,

v.

Isaac HUDSON, Defendant–Appellant.

Isaac HUDSON, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 56177, 57226.

Missouri Court of Appeals, Eastern District, Division Four.

June 12, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 11, 1990.

Application to Transfer Denied Sept. 11, 1990.

Cheryl Rafert, Asst. Public Defender, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

JOSEPH J. SIMEONE, Senior Judge.

I

These proceedings are consolidated appeals by Isaac Hudson from his conviction for forgery, a Class C felony, and from an order denying his motion to vacate sentence filed pursuant to Rule 29.15. We affirm.

Appellant, Isaac Hudson, was charged, tried by a jury, convicted and sentenced for the offense of forgery, a Class C felony. Section 570.090.1(1), RSMo 1986. The trial court found appellant to be a persistent offender and sentenced him to the Department of Corrections and Human Resources for an extended period of ten years. Sections 558.011, 557.036.4, 558.016.3, RSMo.

Appellant raises numerous points for reversal, or in the alternative seeks a remand for a new trial.

II

The essential facts are rather bizarre. Mrs. Lynn Stewart, at the time of the events, was an employee of Famous–Barr department store in Northwest Plaza Shopping Center, and worked in the luggage department.

She testified that she had been an employee of Famous at the time of the inci-

dent, January 10, 1987. On that date she received a telephone call from a customer who stated that he was Dr. John Benson. The caller wanted to purchase some Hartman luggage, a top grade type of luggage. Mrs. Stewart helped the caller decide on just what type of luggage he wanted. The caller said he wanted to put it on his charge account and gave his name, address and telephone number. Mrs. Stewart gave the caller her name. The caller never inquired about the price. He said that he was "sending someone [his nephew—Lewis] to pick up the luggage." Mrs. Stewart indicated that she would need some identification. After the call, Mrs. Stewart felt that "something didn't seem right." She looked up Dr. Benson's name in the phone book, and noticed that the number did not correspond to the one given by the caller. She called Dr. Benson's home and spoke to Mrs. Benson. Mrs. Benson told Mrs. Stewart that Dr. Benson was deceased. After speaking to Mrs. Benson, Mrs. Stewart called the department store security office and told security about her conversation. A member of security, Claude Randall, Jr., the security manager, told her to have the person who came to pick up the luggage sign for it after giving some identification.

About an hour later, the person called again and said that his nephew was not going to pick up the luggage, but that "Robert Darin" would do so. The caller asked if the luggage was ready. Then about an hour later, at about 2:45 p.m., appellant came into Famous, asked for Mrs. Stewart, and said he was there to pick up the luggage. She requested some identification. Appellant said he did not have any. She completed a sales receipt which indicated the sale of three pieces of luggage. She presented this sales receipt to appellant, on which she noted the name of Robert Darin, asked for "some I.D.," and asked appellant to sign the receipt. She requested to see his driver's license and the number. However, he did not give her any identification but wrote a number on the bottom of the receipt and signed it. The signature is illegible. Mrs. Stewart went

to the stock room, obtained the luggage, and returned with it accompanied by a security officer—Officer Randall. Appellant began to take the luggage, but Randall and others, took appellant into custody. Earlier Randall had received information from Mrs. Stewart concerning the telephone call and decided to have the caller come into the store, identify himself and sign a receipt before the luggage was given to him. When the person came in Randall saw appellant approach Mrs. Stewart, sign the receipt and obtain the luggage. Randall encountered the appellant, identified himself and asked appellant to accompany him to the security office. When asked at trial whether appellant said "anything to you," Randall replied that he did not recall, and "not at that time." When asked what appellant told him, Randall replied that appellant told him that "someone on the street [pulled up in a car and] told him [appellant] to get the luggage for them and he would give him $20.00." Randall held appellant until officers from the St. Ann's police department came. Randall checked appellant for identification and found a card with the name of "Robert Darin" on it. In his testimony, Randall could not identify the signature on the sales receipt, although he believed the first letter looked like a "J" and another letter looked like a "B." The name of Dr. John F. Benson appears on the receipt.

Officer John Mueller of the St. Ann police department came to Famous. He went to the security office, where the appellant and Officer Randall were. After speaking to the security officer and learning the facts, Mueller advised appellant of his *Miranda* rights and placed appellant under arrest. Mueller asked his name. Appellant told him his name was Robert Darin. He searched appellant and in a pocket found two cards—a Missouri I.D. card and a library card. The I.D. card contained the name Robert L. Darin, and the other, a library card contained the name of Darin R. Lewis. The I.D. card had a photo of appellant. Mueller called a dispatcher to verify identity. The computer showed that appel-

lant's name was Isaac Hudson. Appellant was then taken to the police station. Between the time appellant was arrested and the time he arrived at the station, Mueller testified that no statements were made by appellant other than giving his name. At the police station appellant said his name was Hudson.

Trial was held in December 1988. Prior to the introduction of testimony, a hearing was held on appellant's motion to suppress evidence and statements. Officer Mueller testified at the motion hearing that he responded to a call and went to Famous–Barr because a suspect was in custody. He went to the security office where a security officer and a black male subject were present. He explained to the subject that he was under arrest for stealing, deceit and forgery and advised him of his Miranda rights. Mueller did not have a *Miranda* form card with him and did not use a form card in advising appellant of his Miranda rights. Mueller testified that he did read each right printed on the form. After receiving his *Miranda* rights, appellant told Mueller his name was "Darin Lewis," and that he "hadn't done anything wrong."

Defense Counsel moved that the cards and appellant's statement that appellant's name was Darin Lewis be suppressed. The trial court overruled the motion as to both the cards and the statement.

At the beginning of the trial, and during voir dire, the court informed the jury panel of the identity of the assistant prosecuting attorney and defense counsel. The court asked if any of the panelists knew the assistant prosecutor or defense counsel. One panelist, Mr. V. _____, indicated he knew defense counsel. During voir dire examination by defense counsel, counsel queried the juror, Mr. V., about knowing him, and asked whether the fact that he was acquainted with the venireman would have any effect on his ability to "render an impartial verdict." The venireman replied, "No." At the end of the voir dire, it was stipulated that there were two black jurors on the panel. Defense counsel raised a

*Batson* issue stating that the state peremptorily struck 50% of the black panelists. The state informed the court that the venireman, who was stricken, was struck because "first and foremost" he knows defense counsel, secondly because he was unemployed, thirdly because he seemed hostile toward the state, and lastly because defense counsel represented him in a case pending in St. Louis County. Defense counsel admitted that he represented the venireman in a pending case. The court accepted the state's explanation as to the purpose of exercising its peremptory challenge of Mr. V. and "felt absolutely no discriminatory motive behind the state's exercising its peremptory challenge" because there were sufficient reasons—(1) the venireman knew defense counsel, (2) the venireman is presently being represented by defense counsel and (3) the state's attorney felt "uneasy" about the general attitude of the venireman. The court therefore found no discrimination in the state exercising its peremptory challenge as to Mr. V.

During defense counsel's opening statement he indicated that the defendant, and perhaps others, would testify on behalf of the defense. The trial proceeded and the above facts were adduced through the testimony of Mrs. Stewart, Mrs. Benson, Officer Claude Randall, Jr., and Officer John Mueller. The appellant did not testify. At the close of the evidence, defense counsel moved for judgment of acquittal; the motion was overruled. Instructions were given, but the court refused to give an instruction on circumstantial evidence, MAI–CR3d 310.02.

In closing argument, the prosecutor argued that (1) appellant made a writing—a charge receipt which purported to have been made by another—and the receipt was not signed by Dr. Benson, and (2) that it was done with the purpose to defraud. The prosecutor commented on appellant's statement that someone asked appellant to pick up the luggage by stating:

... Suppose the defense is actually silly enough to doubt to [sic] anyone's intelli-

gence, how they can come to court and sort of present to you that they're going to put on evidence—

An objection was made on the ground that the defense has no burden of proof and a motion for mistrial was made. The court sustained the objection, but the motion for mistrial was overruled.

Defense counsel argued that the elements of forgery had to be proved beyond a reasonable doubt, and said, "there's no evidence that he [appellant] did it with the purpose to defraud," but there was evidence that someone offered him money to pick up the luggage.

The jury retired and found appellant guilty of forgery.

On January 27, 1989, after the motion for new trial was overruled, and after the court found that appellant was a persistent offender, having pleaded guilty to assault, burglary, stealing, and robbery, the appellant was sentenced to ten years.

On February 2, 1989, appellant filed a motion to vacate sentence pursuant to Rule 29.15. Among other things he alleged that the offense of forgery was not proved because there was no "reliance" on the part of the employees of Famous as to the fraud. After counsel was appointed, an amended motion was filed on June 14, 1989, alleging ineffective assistance of trial counsel. The amended motion contended, *inter alia,* that (1) defense counsel failed to argue that the state did not prove that movant acted with the "purpose to defraud," (2) that defense counsel promised in his opening statement that he would present testimony that he knew he would not be able to present and (3) defense counsel failed to object to the state's comments on movant's silence when the state questioned Officer Mueller concerning whether or not movant made any statements after giving his name.

Movant moved for a full evidentiary hearing on his motion; the state moved to deny a hearing. The court sustained the motion for an evidentiary hearing as to those points noted above, but sustained the state's motion as to other points raised because they were alleged trial errors.

On July 7, 1989, an evidentiary hearing was held. At the hearing, movant testified he told his trial counsel that he was approached by a man, whose name he did not know, outside Famous who asked him to pick up some luggage for him. Trial counsel also testified. He testified that after looking over the trial transcript, he argued at trial that "Isaac was asked to go in and purchase or sign for this luggage with no purpose to defraud Famous–Barr." He also testified that if the state had not called Claude Randall, he would have, and that if Randall did not testify, movant may have then taken the stand to explain his defense.

On July 17, 1989, the motion court made its findings of fact and conclusions of law. The court found that, as to the allegation that counsel did not argue intent to defraud, counsel did indeed argue that the state failed to establish the element of "purpose of defraud" and the jury chose not to believe this defense. This allegation is therefore refuted by the record.

As to the allegation that trial counsel indicated in his opening statement that certain witnesses and evidence would be introduced including movant, the court found that there was an understanding that movant "might" testify if his defense was not brought out by a state witness. The court concluded that there was no ineffectiveness. As to the contention that trial counsel did not object to the state's comments on movant's silence during the testimony of Mueller after he made the arrest, there was no evidence presented at the evidentiary hearing, and furthermore the record refutes movant's characterization of a "comment on silence."

The court therefore denied the 29.15 motion because movant failed to show that counsel lacked the care and skill of a reasonably competent attorney rendering similar services.

In due time appeals were taken to this court, and consolidated.

## III

On appeal, appellant paints with a broad brush alleging ten separate points for reversal or reversal and remand. Most of the points are not meritorious. Appellant's principal point, which counsel admitted in oral argument, is that the trial court erred in declining to grant his motion for judgment of acquittal at the close of the evidence because the offense of forgery was not proved in that there was insufficient evidence that appellant acted with a purpose to defraud or to show that the writing purported to have been made by another. He argues that the employees were not defrauded because they knew about the criminal scheme. He contends that while the evidence may show the offense of a fraudulent use of a credit device, a Class A misdemeanor pursuant to § 570.130, RSMo., 1986, the facts do not show that the felony of forgery was committed. Section 570.090; see Annot., 24 ALR 3d 986 (1969).

In determining whether a submissible case is made and in assessing the sufficiency of the evidence on the issue of forgery, we accept as true all the evidence and inferences that tend to support the verdict and disregard all evidence and inferences to the contrary. The determination of the credibility of the witnesses and the weight to be given their testimony are matters for the jury to determine. Our inquiry is limited to whether the evidence, viewed in the light most favorable to the state, is sufficient to support the verdict. *State v. Bolder*, 635 S.W.2d 673, 679 (Mo. banc 1982); *State v. Brown*, 660 S.W.2d 694, 698 (Mo. banc 1983).

## IV

Section 570.090.1(1) provides:

A person commits the crime of forgery if, with the purpose to defraud, he

(1) Makes, completes, alters or authenticates any writing so that it purports to have been made by another or at another time or place or in a numbered sequence other than was in fact the case or with different terms or by authority of one who did not give such authority; ....

Forgery is a class C felony.

Forgery is an offense "aimed at safeguarding confidence in the genuineness of documents relied upon in commercial and business activity." S. LaFave & A. Scott, Jr., *Criminal Law*, at 671 (1972); See the history of forgery and the development of the Missouri statutes in G. Schultz, *Criminal Offenses and Defenses in Missouri*, at 133–137 (1986). Forgery is the fraudulent making of a false writing having apparent legal significance. The requisites of the offense are (1) a writing of such a nature that it is a possible subject of forgery, (2) which writing is false, and (3) the writing was made false with intent to defraud. R. Perkins, *Criminal Law* at 340–341 (2nd ed. 1969); 36 Am.Jur.2d, *Forgery* § 3 at 683 (1968). Forgery may be committed by a person signing his own name or a fictitious name. 36 Am.Jur.2d, *Forgery* §§ 7 and 11. The Missouri Courts have said that to constitute the crime of forgery, three things are essential: (1) a false making or other alteration of an instrument or writing, (2) a fraudulent intent and (3) an instrument so made or altered as to be apparently capable of effecting a fraud. *State v. Andrews*, 297 Mo. 281, 248 S.W. 967, 969 (1923). *State v. Hogshooter*, 640 S.W.2d 202, 204 (Mo.App.1982). Forgery may be committed in various ways. *State v. Farmer*, 612 S.W.2d 441, 445 (Mo.App.1981). The intent to defraud is an essential element of the offense of forgery. *State v. Boley*, 565 S.W.2d 828, 831 (Mo.App.1978). The intent to defraud need not be an intent to defraud some particular person, the intent need only be a general intent to defraud and the act of forgery itself, if shown, implies such an intent. *State v. Wakefield*, 682 S.W.2d 136, 143 (Mo.App.1984). An intent to defraud may be inferred from the circumstances. *State v. Hogshooter, supra*, 640 S.W.2d at 204. Reliance is not an element of the offense of forgery.

We believe that there is a forgery in this case and that the elements of

forgery are satisfied. The evidence shows that someone called Famous, representing himself to be Dr. Benson, ordered luggage to be placed on his charge account, and said that Robert Darin would pick up the luggage. Appellant appeared at Famous to pick up the luggage, signed an illegible or fictitious name on the sales receipt, with the name of Dr. Benson on it, gave an assumed name to officials, and carried identification cards with different names than his own. In signing the sales receipt, whether he signed his own name, or that of Dr. Benson, or a fictitious name is of really no significance. Whether appellant signed Dr. Benson's name, his own name or a fictitious name, the signature purported to have been made in the name of another. Appellant signed the receipt and completed a writing purporting to have been made by another and without the authority of the owner of the charge account. "Purport" means to have a "specious appearance" or something "implied or inferred" which is not consistent with fact. *Webster's New Collegiate Dictionary, 1987.* Under these circumstances the elements of forgery were established and § 570.090 was violated. The jury could, under the circumstances, well infer an intent to defraud. The appellant's defense that someone asked him to pick up the luggage was found not to be credible by the jury.

Appellant urges that while he may have committed the offense of fraudulent use of a credit device, the evidence did not show the offense of forgery. Recently, in *State v. Grady,* 691 S.W.2d 301 (Mo.App. 1985), this court affirmed a conviction for forging a name on a credit card slip while purchasing gasoline. Defendant contended that the court erred in sentencing him for forgery because his conduct proved only the fraudulent use of a credit card device. We held that the fact that the accused was charged and the evidence supported a conviction under a statute carrying a more severe penalty provides no defense to an accused, and the fact that substantially the same conduct may amount to an offense under another statute does not render the other statute invalid. We held that where conduct may constitute an offense under two different statutes, the state may elect under which statute to proceed. *Grady,* 691 S.W.2d at 303.

Furthermore, numerous authorities have held that the crime of forgery may be committed by signing a credit charge or credit sales slip either with a false name or without the consent of the person entitled to sign is forgery. Annot., 90 ALR 2d 822 (1963); *People v. Stevens,* 175 Cal.App.2d 123, 345 P.2d 582 (1959); *State v. Devenow,* 253 La. 796, 220 So.2d 78 (1969); *Phillips v. State,* 450 S.W.2d 650 (Tex.Crim.App. 1970); *People v. Le Grand,* 81 A.D.2d 945, 439 N.Y.S.2d 695 (3rd Dept.1981).

Appellant relies on several authorities which he argues govern the circumstances of this case to show that the evidence was insufficient to prove the offense of forgery. *State v. Wright,* 409 S.W.2d 797 (Mo.App. 1966); *State v. Kinder,* 315 Mo. 1314, 290 S.W. 130 (Mo.1926); *State v. Grady, supra,* 691 S.W.2d 301; and *State v. Riley,* 758 S.W.2d 479 (Mo.App.1988).

*State v. Kinder* is not in point. In *State v. Kinder,* the evidence was that a check showed on its face that it was signed by defendant as the agent of another. The Supreme Court held that although the defendant may be guilty of an offense, defendant was not guilty of forgery because he signed the document as an agent of a principal therein named. That is not the situation here. *Wright* was not a forgery case. In *State v. Riley, supra,* a mother, as an agent, endorsed a check in the name of her 15 year old son who was in juvenile detention, and then followed the endorsement with her own signature. The court held there was no forgery because there was no intent to defraud and because when she signed as agent, her conduct was not forgery.

None of the authorities relied upon by appellant supports his theory that the offense of forgery was not proved. The evi-

dence was sufficient for the jury to find that appellant was guilty of the offense of forgery. This point must be ruled adverse to appellant.

## V

The other points raised by the appellant are without merit. He contends that the court erred in overruling his motion to suppress the identification cards and his statements when arrested were inadmissible because the seizure was made without a warrant and the statements were involuntary in violation of his *Miranda* rights. There was no error. Officer Mueller obtained information from Famous' employees. There was probable cause for Officer Mueller to arrest appellant, and a search and statements made incident to an arrest were clearly admissible. The collective knowledge and the available facts are the criteria to be used in assessing whether probable cause to arrest exists. Having probable cause to arrest, a search and the statements were admissible as the product of a lawful arrest. *State v. Brown,* 755 S.W.2d 749, 751 (Mo.App.1988).

It is well established that all warrantless searches, subject to a few well defined exceptions, are unconstitutional. *State v. Jacobs,* 704 S.W.2d 300, 301 (Mo. App.1986). *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). One of the exceptions to the warrant requirement is a search incident to a lawful arrest. *Gustafson v. Florida,* 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973). The search incident to a lawful arrest exception to the warrant requirement presumes a lawful arrest. *Jacobs,* 704 S.W.2d at 301. The state bears the burden of showing the search and seizure comes within an exception to the warrant requirement. *Id.*

In the case at bar, the search of the appellant was a search incident to a lawful arrest. There was probable cause that the appellant had committed an offense. Therefore, the arrest was lawful as

was the subsequent search that produced the appellant's identification cards. Appellant's motion to suppress the identification cards was properly denied.

The motion to suppress the appellant's statements to the police officer was also properly denied. The appellant claims he was not given his *Miranda* rights, but the police officer testified that he read appellant the *Miranda* rights before he made a statement. The reviewing court defers to the trial court because the trial court has a superior opportunity to determine the credibility of the witnesses and the weight of the evidence. *State v. Beck,* 687 S.W.2d 155, 158 (Mo. banc 1985). Thus, the trial court properly admitted appellant's statements.

Appellant contends that there was discrimination in the state peremptorily striking one of two blacks from the panel and that there was a *Batson* violation. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *State v. Antwine,* 743 S.W.2d 51 (Mo. banc 1987). There was no *Batson* violation. No prima facie case was made and there were neutral and sufficient explanations for striking Mr. V. as a venireman. *See State v. Andrews,* 770 S.W.2d 424, 428 (Mo.App.1989); *State v. Rush,* 788 S.W.2d 784 (Mo.App. 1990).

Under *Batson,* the state's explanation must be (1) neutral, (2) related to be case to the tried, (3) clear and reasonably specific, and (4) legitimate. *State v. Butler,* 731 S.W.2d 265, 268 (Mo.App.1987). In the case at bar, the state proffered reasons for striking the venireman were (1) the juror knew the defendant's attorney, (2) the defendant's attorney represented the juror in a pending litigation, and (3) the prosecutor felt uneasy about the venireman's demeanor and behavior during voir dire. Assuming a *prima facie* case of racial discrimination was shown, the prosecutor's reasons for striking the black venireman were racially neutral. The fact that defense counsel was representing the venireman in a

pending matter is sufficient reason to utilize a peremptory strike to remove him from the panel.

Appellant next complains that the court failed to give a circumstantial evidence instruction. There was no error. *See State v. Bannister*, 680 S.W.2d 141, 149 (Mo. banc 1984); MAI–CR3d 310.02, Notes on Use, Note 3.

■ The court must instruct on circumstantial evidence if the evidence in the case is wholly circumstantial. *State v. Bannister*, 680 S.W.2d 141, 148 (Mo. banc 1989). The judge need not submit the instruction on circumstantial evidence where both direct and circumstantial evidence exist. *Id.*

■ In the case at bar, there is direct evidence that the appellant committed the crime. The eye-witness testimony shows that the appellant walked into Famous–Barr, requested the previously ordered luggage, signed the sales receipt, and began to leave with the luggage. This testimony provides direct evidence of the elements of the crime charged; therefore, the failure to give an instruction regarding circumstantial evidence was not error.

■ Fifth, appellant urges that the closing argument of the prosecutor was a comment on his failure to testify and shifted the burden of proof when the prosecutor argued the incredulity of appellant's defense that someone offered him money to pick up the luggage. An objection was made and sustained, but a motion for mistrial was denied. There was no comment on the failure to testify or a shifting of the burden of proof. *State v. Bulloch*, 785 S.W.2d 753 (Mo.App.1990). The trial court did not err in declining to grant a mistrial. The declaration of a mistrial is a drastic remedy and the court did not abuse its discretion. *State v. Young*, 701 S.W.2d 429, 434 (Mo. banc 1985), *cert. denied*, 476 U.S. 1109, 106 S.Ct. 1959, 90 L.Ed.2d 367 (1986).

■ Appellant next contends that the court erred in declining to grant a mistrial during Officer Mueller's testimony when the state elicited testimony regarding custodial silence. No objection was made at trial. Generally, evidence of post-arrest silence is inadmissible as affirmative proof or to impeach the defendant's testimony. *State v. Mathenia*, 702 S.W.2d 840, 842 (Mo. banc 1986); *cert. denied*, 477 U.S. 909, 106 S.Ct. 3286, 91 L.Ed.2d 574 (1986); *Bailey v. State*, 754 S.W.2d 38, 39 (Mo.App. 1988); *State v. Sproling*, 752 S.W.2d 884, 888 (Mo.App.1988). However, the general rule is not applicable when the defendant does not exercise his right to remain silent and elects, instead, to make a statement. *State v. Sproling, supra*, 752 S.W.2d at 888; *State v. Frentzel*, 717 S.W.2d 862, 866 (Mo.App.1986); *Bailey v. State*, 754 S.W.2d at 39. Appellant did speak and give a false name. Therefore, there is no error in this regard.

Neither is there merit to appellant's point that the court lacked jurisdiction to hear the case because the information was defective and because the proof at trial was at variance with the information. The amended information contained all the essential elements of the offense. *See State v. Brown*, 660 S.W.2d 694, 698 (Mo. banc 1983).

■ Lastly, appellant complains that the court erred in admitting the testimony of Mrs. Stewart because, he says, such testimony was hearsay. When Mrs. Stewart began to recite the conversation she had with the caller, an objection was made on the ground of hearsay. At first the court sustained the objection. The prosecutor approached the bench and contended that the statement of the caller "goes directly to the issue of a defrauding statement" and is not "offered to prove the truth of it but offered for the fact that it shows why Mrs. Stewart did what she did." The court then overruled the objection and permitted the admission of Mrs. Stewart's testimony "for that purpose," and so informed the jury.

Mrs. Stewart's testimony was not hearsay. The testimony was not assertive and

was offered not to prove the truth of the matter asserted therein, but only to prove the fact of the assertions. *State v. Jordan,* 751 S.W.2d 68, 75 (Mo.App.1988); *State v. Mallett,* 732 S.W.2d 527, 536 (Mo. banc 1987); *Danna v. Casserly,* 763 S.W.2d 338, 345 (Mo.App.1988) (dissenting opinion).

We conclude that the points raised on appellant's direct appeal are without merit and therefore the judgment of conviction must be affirmed.

## VI

We turn to the order and judgment denying appellant's Rule 29.15 motion. Appellant contends he did not receive effective assistance of counsel and raises several points to show ineffectiveness. Appellant contends (1) that trial counsel failed to argue that the state did not establish an intent to defraud; (2) asserted in opening statement that certain witnesses would be called, including appellant which was not done, and (3) failed to object to the statements of Officer Mueller concerning "custodial silence."

▇▇▇ Our review of a Rule 29.15 motion is very limited. It is limited to a determination of whether the motion court's findings and conclusions are clearly erroneous. Rule 29.15(j); *Mallett v. State,* 769 S.W.2d 77, 79 (Mo. banc 1989); *Day v. State,* 770 S.W.2d 692, 695 (Mo. banc 1989). The motion court's findings, conclusions and order are clearly erroneous only if a review of the record leaves the appellate court with a definite and firm belief that a mistake has been made. *Foster v. State,* 748 S.W.2d 903, 905 (Mo.App.1988); *Armour v. State,* 741 S.W.2d 683, 688 (Mo.App. 1987).

The legal principles relative to the standards relating to ineffectiveness of counsel are clear.

▇▇▇ In order to prevail on a claim of ineffective assistance of counsel, movant has a heavy burden. It must be shown that (1) his attorney failed to exercise that customary skill and diligence that a reasonably competent attorney would perform under similar circumstances and (2) he was thereby prejudiced. *Mallett v. State, supra,* 769 S.W.2d at 82; *Roberts v. State,* 775 S.W.2d 92, 94 (Mo. banc 1989); *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987); *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). When examining the reasonableness of defense counsel's actions, there is a strong presumption that the attorney's conduct falls within the wide range of reasonable professional assistance because it is easy for the court examining counsel's defense after it has proved unsuccessful to conclude that an act or omission is unreasonable. *Sanders, supra,* 738 S.W.2d at 858. Counsel's conduct must so undermine the proper functioning of the adversarial process and counsel's deficiencies must prejudice his defense. The movant must make both showings. *Sanders, supra,* 738 S.W.2d at 857.

▇▇▇ Tested by these well-settled principles, the motion court did not err in denying Hudson's 29.15 motion. The court found that movant failed to show that trial counsel lacked the care and skill of a reasonably competent attorney rendering similar services. The motion court found that the contention that defense counsel did not argue an intent to defraud was refuted by the record, that the movant might testify at trial if his defense was not brought out by a state witness, was not ineffectiveness, and that no evidence was presented at the evidentiary hearing concerning custodial silence. Furthermore, the record refuted the movant's characterization of a "comment on silence."

▇▇▇ We conclude that the trial court was not clearly erroneous. Failure to object to evidence is not generally ineffectiveness of counsel, *State v. Morris,* 591 S.W.2d 165, 169 (Mo.App.1979), and the motion court cannot be faulted for overruling a non-meritorious objection. *Forshee v. State,* 763 S.W.2d 352, 356 (Mo.App.1988).

In his final contention, appellant claims the trial court erred in denying his 29.15 motion because no sufficient findings of fact and conclusions of law were made regarding nine separate allegations asserted in his motion. He claims that the nine grounds, ranging from an alleged illegal search and seizure, to the admission of hearsay testimony, to the failure to grant his motion of acquittal, which were raised on direct appeal should also form the basis for post-conviction relief and that the trial court erred in not making findings of fact and conclusions on these assertions.

■ Trial errors are ordinarily not cognizable in a post-conviction proceeding. *McCrary v. State*, 529 S.W.2d 467, 471 (Mo.App.1975).

In *Rainwater v. State*, 770 S.W.2d 368, 370–371 (Mo.App.1989) the court said that:

The predecessor rule for post-conviction relief specifically provided that "[m]ere trial errors are to be corrected by direct appeal" and "[a] proceeding under this Rule ordinarily cannot be used as a substitute for ... a second appeal." Rule 27.26(b)(3) (Repealed). Although the repealed rule provided that "trial errors affecting constitutional rights may be raised even though the error could have been raised on appeal," Rule 27.-26(b)(3), trial errors could not be brought within the scope of the rule merely by alleging as a conclusion that they affected constitutional rights. *Stuckey* [*v. State*], 756 S.W.2d [587] at 590 [(Mo.App.1988)]. Moreover, even trial errors affecting constitutional rights could not be litigated in a Rule 27.26 motion except in rare and exceptional circumstances, *Id.*, and only when presented at the earliest time consistent with good pleading and orderly procedure. *Vaughn v. State*, 763 S.W.2d 232, 234 (Mo.App.1988).

Rule 29.15 replaced Rule 27.26 and, in many respects, modified and limited procedures for obtaining postconviction relief. Rule 29.15 lacks comparable provisions dealing with trial errors. Under Rule 29.15(1), a defendant's direct appeal and appeal from a judgment overruling or sustaining a Rule 29.15 motion are consolidated into one proceeding. Rule 29.15(m) allows defendants who were sentenced before 1988 and who have not utilized repealed Rule 27.26 to file Rule 29.15 motions between January 1, 1988, and June 30, 1988.

■ We hold, as in *Rainwater, supra,* that a movant who seeks postconviction relief pursuant to the window established by Rule 29.15(m) cannot raise matters of trial error without proving that the grounds amounted to constitutional violations and showing exceptional circumstances to justify not raising those grounds on direct appeal.

■ All of the matters alleged in appellant's motion to vacate are trial errors which are disposed of on this direct appeal. There are no exceptional circumstances.

Therefore, the motion court did not err in denying movant-appellant's Rule 29.15 motion.

## VII

We have read the entire record, both on direct appeal and the Rule 29.15 motion. We find no error. The judgment of conviction and the order denying the Rule 29.15 motion are affirmed.

Judgment affirmed.

CARL R. GAERTNER, P.J., and STEPHAN, J., concur.